557 S.E.2d 853

**Charlotte PRITT, Plaintiff Below, Appellant,**

v.

**The REPUBLICAN NATIONAL COMMITTEE, et al., Defendants Below, Appellees.**

No. 29326.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 3, 2001.

Decided Dec. 12, 2001.

Margaret L. Workman, Esq., Margaret Workman Law, L.C., H.H. Roberts, Esq., Charleston, for the Appellant.

Michael W. Carey, Esq., Carey Scott & Douglas, PLLC, Charleston, Bobby R. Burchfield, Esq., Jason A. Levine, Esq., Covington & Burling, Washington, District of Columbia, for the Appellees.

DAVIS, Justice.

The appellant herein and plaintiff below, Charlotte Pritt [hereinafter referred to as "Ms. Pritt"], appeals from orders entered May 15, 2000, and June 13, 2000, by the Circuit Court of Fayette County. In the first order, the circuit court granted .summary judgment for the appellees herein and defendants below, the Republican National Committee, *et al.* [hereinafter collectively referred to as "RNC"],[1] concluding that statements made in advertisements sponsored by RNC during the 1996 West Virginia Gubernatorial race were not false or published with actual malice as alleged by Ms. Pritt. The circuit court's second order denied Ms. Pritt's "motion for reconsideration". On appeal to this Court, Ms. Pritt assigns numerous errors, including (1) summary judgment was not proper because there existed a genuine issue of material fact; (2) the circuit court failed to determine whether the statements in issue were defamatory; (3) deposition testimony was erroneously excluded; and (4) in rendering its decision, the circuit court neglected to address the remaining counts asserted in her amended complaint. Upon a review of the parties' arguments, the record submitted for appellate review, and the pertinent authorities, we agree with Ms. Pritt that genuine issues of material fact do preclude the disposition of this matter by summary judgment. Accordingly, we reverse the circuit court's ruling to the contrary, and remand this case for further proceedings consistent with this Opinion.

## I.

## FACTUAL AND PROCEDURAL HISTORY

In 1996, Ms. Pritt, a former West Virginia schoolteacher and state legislator, was the Democratic party's candidate for the office of Governor of the State of West Virginia. During the month immediately preceding the general election, the National Republican Senatorial Committee [hereinafter referred to as "NRSC"] formally organized the West Virginia State Victory Committee [hereinafter referred to as "Victory Committee"] pursuant to the election laws of this State. *See generally* W. Va.Code § 3–8–1, *et seq.* Among other activities, the Victory Committee sponsored and published numerous radio and television advertisements, during the final weeks of the campaign, which called into question Ms. Pritt's character and campaign platform. One of these radio spots specifically charged:

> Behind Charlotte Pritt's campaign smile is a liberal voting record she can't hide from.
>
> In the State Senate, Charlotte Pritt proposed teaching first graders about condoms.
>
> Surprised? You shouldn't be.
>
> Senator Pritt also voted to permit the sale of pornographic Videos to children.
>
> She even voted to allow convicted drug abusers to work in our public schools.

1. In her complaint, Ms. Pritt named multiple defendants: the National Republican Senatorial Committee, the West Virginia State Victory Committee, John Doe, Jane Doe, and the appellee named herein, the National Republican Committee, a.k.a. the National Republican Party. For ease of reference, and to maintain consistency with the circuit court's order underlying the instant appeal, we will collectively refer to these defendants below, who are also appellees herein, as the Republican National Committee, or "RNC," except where designation of specific parties is warranted.

If parents can't trust Charlotte Pritt to protect our children, think also of our veterans.

Charlotte Pritt voted against honoring the men and women of West Virginia who fought in the Gulf War.

Senator Pritt voted to allow the burning of the American Flag that all veterans fought so hard to defend.

She even opposed requiring students to begin their day with the Pledge of Allegiance.

Look behind the Smile.

Charlotte Pritt——wrong on the issues.

Wrong for West Virginia[.]

Paid for by West Virginia State Victory Committee

Mary M. Dotter, Treasurer

Not authorized by Underwood for Governor

Television advertisements backed by the Victory Committee made similar claims.

Given the temporal restraints of the campaign's culmination, Ms. Pritt was unable to respond to many of these allegations.[2] Ultimately, she lost the general election to the Republican nominee for Governor, Cecil Underwood. Shortly after Governor Underwood assumed office, the Victory Committee was dissolved.

Subsequently, on October 31, 1997, Ms. Pritt filed a civil action in the Circuit Court of Fayette County against RNC, NRSC, the Victory Committee, John Doe, and Jane Doe.[3] In her lawsuit, Ms. Pritt alleged that the defendants had defamed her,[4] exposed her to "false light" publicity, and violated W. Va.Code § 3–8–11(c) (1995) (Repl.Vol.1999).[5] Following discovery, the defendants collectively moved for summary judgment.[6] By order entered May 15, 2000, the circuit court granted the defendants' motion, ruling, in part, that

As a former state legislator and candidate for the office[ ] of Governor, plaintiff [Ms. Pritt] is a "public figure" for purposes of this lawsuit. . . .

As a public figure, plaintiff must prove by "clear and convincing evidence" that the statements at issue were both false and published with "actual malice"—that defendants had "knowledge at the time of publication that they were false" or published them with "reckless and willful disregard for the truth." . . .

Summary judgment on all four Counts is warranted because the statements at issue are not false. Defendants analyzed the legislative record and explained at length why all but one of the statements at issue are true, and why the last one is a protected expression of opinion. . . . In particular, defendants set forth plaintiff's legislative

---

**2.** Once the damaging advertisements were disseminated, the Republican gubernatorial candidate, Cecil Underwood, denounced the ads, disassociated himself therefrom, and requested the Victory Committee to cease their further publication. The Victory Committee, however, refused these requests and continued to endorse the advertisements through Election Day 1996.

**3.** Ms. Pritt filed an amended complaint on October 26, 1998.

**4.** Specifically, the circuit court denominated Ms. Pritt's defamation claims as defamation *per quod* (Count I) and defamation *per se* (Count III). *See* Black's Law Dictionary 427 (7th ed.1999) (defining "defamation *per quod*" as "[d]efamation that either (1) is not apparent but is proved by extrinsic evidence showing its injurious meaning or (2) is apparent but is not a statement that is actionable per se" and construing "defamation *per se*" to mean "[a] statement that is defamatory in and of itself and is not capable of an innocent meaning").

**5.** W. Va.Code § 3–8–11 (1995) (Repl.Vol.1999) criminalizes various improper election practices. Pertinent to the instant proceeding is subsection (c) thereof, which provides that

[a]ny person who shall, knowingly, make or publish, or cause to be made or published, any false statement in regard to any candidate, which statement is intended or tends to affect any voting at any election whatever . . .

. . . .

[i]s guilty of a misdemeanor, and, on conviction thereof, shall be fined not more than ten thousand dollars, or confined in jail for not more than one year, or, in the discretion of the court, shall be subject to both such fine and imprisonment.

W. Va.Code § 3–8–11(c).

**6.** A motion for summary judgment is permitted by Rule 56(c) of the West Virginia Rules of Civil Procedure when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."

votes that supported each statement and countered the interpretations giving rise to plaintiff's claims. . . .

Summary judgment on all four Counts is also warranted because there is no record evidence that any defendant acted with "actual malice."

(Citations omitted). In response to this ruling, Ms. Pritt filed, on May 25, 2000, a "motion for reconsideration," which the circuit court denied by order entered June 13, 2000. It is from these orders of the circuit court that Ms. Pritt now appeals to this Court.

## II.

### STANDARD OF REVIEW

 The instant appeal comes to this Court from decisions of the circuit court granting summary judgment in favor of RNC and denying Ms. Pritt's post-judgment motion. We typically apply a plenary review to an order of a circuit court deciding a summary judgment motion. "A circuit court's entry of summary judgment is reviewed *de novo.*" Syl. pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). Also involved in this proceeding are numerous legal questions, the resolution of which is integral to the summary judgment ruling. In this regard, we likewise review anew a lower tribunal's determination of questions of law. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995).

 Finally, we must ascertain the appropriate standard of review to apply to the circuit court's order of June 13, 2000, where-

by it denied Ms. Pritt's "motion for reconsideration". Generally speaking, "a 'motion to reconsider' is not a properly titled pleading in West Virginia." *Richardson v. Kennedy,* 197 W.Va. 326, 329, 475 S.E.2d 418, 421 (1996) (citations omitted). Nevertheless, we routinely re-characterize such motions as those made pursuant to Rules 59(e) or 60(b) of the West Virginia Rules of Civil Procedure depending upon when they were filed in the circuit court.

When a party filing a motion for reconsideration does not indicate under which West Virginia Rule of Civil Procedure it is filing the motion, the motion will be considered to be either a Rule 59(e) [7] motion to alter or amend a judgment or a Rule 60(b) [8] motion for relief from a judgment order. If the motion is filed within ten days of the circuit court's entry of judgment, the motion is treated as a motion to alter or amend under Rule 59(e). If the motion is filed outside the ten-day limit, it can only be addressed under Rule 60(b).

Syl. pt. 2, *Powderidge Unit Owners Ass'n v. Highland Props., Ltd.,* 196 W.Va. 692, 474 S.E.2d 872 (1996) (footnotes added). *Accord* Syl. pt. 1, *Richardson v. Kennedy,* 197 W.Va. 326, 475 S.E.2d 418 (" 'A motion to amend or alter judgment, even though it is incorrectly denominated as a motion to "reconsider", "vacate", "set aside", or "reargue" is a Rule 59(e) motion if filed and served within ten days of entry of judgment.' Syllabus Point 1, *Lieving v. Hadley,* 188 W.Va. 197, 423 S.E.2d 600 (1992).").

 In the case *sub judice,* it appears from the record that Ms. Pritt filed her "motion for reconsideration" within ten days of the circuit court's summary judgment or-

---

7. Rule 59(e) of the West Virginia Rules of Civil Procedure permits a party to file a "motion to alter or amend the judgment . . . not later than 10 days after entry of the judgment."

8. W. Va. R. Civ. P. 60(b) permits, in pertinent part,

[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence which by due diligence could not

have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

der. Accordingly, we will treat this motion as one made pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure. *See* Syl. pt. 2, *Powderidge,* 196 W.Va. 692, 474 S.E.2d 872.

The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.

Syl. pt. 1, *Wickland v. American Travellers Life Ins. Co.,* 204 W.Va. 430, 513 S.E.2d 657 (1998). Therefore, we apply a *de novo* standard of review to the circuit court's ruling in this regard. *See* Syl. pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755. Having established the standards of review applicable to this case, we proceed to consider the parties' arguments.

## III.

### DISCUSSION

On appeal to this Court, Ms. Pritt raises numerous assignments of error, including the circuit court (1) improperly granted summary judgment to RNC when there existed a genuine issue of material fact; (2) failed to determine whether the Victory Committee's advertisements were defamatory; (3) erroneously excluded deposition testimony; and (4) neglected to address the remaining claims asserted in her amended complaint. Despite these various contentions, however, the primary matter to be resolved by this Court is the propriety of the circuit court's summary judgment ruling. It is with this issue, then, that we will begin our deliberation and determination of this case.

■ " 'The function of summary judgment is 'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.' " *Powderidge,* 196 W.Va. at 697, 474 S.E.2d at 877 (quoting *Hanlon v. Chambers,* 195 W.Va. 99, 106, 464 S.E.2d 741, 748 (1995)). Therefore, summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is

entitled to a judgment as a matter of law." W. Va. R. Civ. P. 56(c). In other words,

" '[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992).

Syl. pt. 1, *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995).

On the other hand, and as suggested by Rule 56(c), this Court will reverse summary judgment if we find, after reviewing the entire record, a genuine issue of material fact exists or if the moving party is not entitled to judgment as a matter of law. In cases of substantial doubt, the safer course of action is to deny the motion and to proceed to trial.

*Id.,* 194 W.Va. at 58–59, 459 S.E.2d at 335–36.

■ When assessing whether summary judgment is appropriate, then, one of the main considerations is whether there exists a genuine issue of material fact. *See* W. Va. R. Civ. P. 56(c); Syl. pt. 1, *Williams,* 194 W.Va. 52, 459 S.E.2d 329.

"Roughly stated, a 'genuine issue' for purposes of West Virginia Rule of Civil Procedure 56(c) is simply one half of a trialworthy issue, and a genuine issue does not arise unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party. The opposing half of a trialworthy issue is present where the non-moving party can point to one or more disputed 'material' facts. A material fact is one that has the capacity to sway the outcome of the litigation under the applicable law." Syl. Pt. 5, *Jividen v. Law,* 194 W.Va. 705, 461 S.E.2d 451 (1995).

Syl. pt. 2, *Tolliver v. Kroger Co.,* 201 W.Va. 509, 498 S.E.2d 702 (1997). In making such a determination,

[t]he circuit court's function at the summary judgment stage is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986). Consequently, we must draw any permissible inference from the underlying facts in the most favorable light to the party opposing the motion.... In assessing the factual record, we must grant the nonmoving party the benefit of inferences, as "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513, 91 L.Ed.2d at 216. Summary judgment should be denied "even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom." *Pierce v. Ford Motor Co.*, 190 F.2d 910, 915 (4th Cir.), *cert. denied*, 342 U.S. 887, 72 S.Ct. 178, 96 L.Ed. 666 (1951).

*Williams*, 194 W.Va. at 59, 459 S.E.2d at 336 (additional citations omitted). Moreover,

[a] nonmoving party need not come forward with evidence in a form that would be *admissible at trial in order to avoid summary judgment. Celotex Corp.[ v. Catrett ]*, 477 U.S. [317,] 324, 106 S.Ct. [2548,] 2553, 91 L.Ed.2d [265,] 274 [ (1986) ]. However, to withstand the motion, the nonmoving party must show there will be enough competent evidence available at trial to enable a finding favorable to the nonmoving party.

*Williams*, 194 W.Va. at 60–61, 459 S.E.2d at 337–38 (citation omitted).

■ With these principles in mind, and upon a review of the record submitted for appellate consideration in this case, we conclude that there are genuine issues of material fact so as to necessitate the presentation of this case to a jury. Unlike the circuit court, we are not firmly convinced that the factual issues herein have been finally resolved. Specifically, before this Court, the parties repeatedly and continuously have argued the facts giving rise to the instant appeal and whether the allegedly defamatory statements were tainted with falsity or laced with malice. When faced with such an ongoing factual dispute, and inferences that, if viewed in the nonmovant's favor,[9] could support a verdict for the nonmovant, we must not continue to harbor these doubts as to whether summary judgment is appropriate but rather hand the case over to a jury, in whose province such factual determinations lie.[10] Accordingly, we reverse the circuit court's rulings granting summary judgment to RNC, and affirming

---

**9.** *See Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 59, 459 S.E.2d 329, 336 (1995) (counseling that, when deciding a motion for summary judgment, the reviewing tribunal "must draw any permissible inference from the underlying facts in the most favorable light to the party opposing the motion.... In assessing the factual record, [it] must grant the nonmoving party the benefit of inferences ...." (citations omitted)).

**10.** We remain somewhat troubled by the circuit court's decision, during the summary judgment proceedings, to discredit the evidence introduced by Ms. Pritt to demonstrate the existence of a genuine issue of material fact. In prior cases we have held that

"[t]he West Virginia Rules of Evidence ... allocate significant discretion to the trial court in making evidentiary ... rulings. Thus, rulings on the admissi[bility] of evidence ... are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary ... rulings of the circuit court under an abuse of discretion standard." Syl. Pt. 1, in part, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995). Syl. pt. 9, *Tudor v. Charleston Area Med. Ctr., Inc.*, 203 W.Va. 111, 506 S.E.2d 554 (1997). While the circuit court generally possesses broad authority in this regard, where summary judgment proceedings are concerned, the evidentiary standard to be satisfied by the nonmoving party is not the same obstacle that he/she must overcome at trial. *See Williams*, 194 W.Va. at 60, 459 S.E.2d at 337 ("A nonmoving party need not come forward with evidence in a form that would be *admissible at trial in order to avoid summary judgment.*" (citation omitted)). Furthermore, Ms. Pritt suggests that the deposition testimony she offered was admissible pursuant to several different provisions of the West Virginia Rules of Evidence, and not just under the one relied upon by the circuit court. Therefore, upon remand, we urge the circuit court to consider these various evidentiary rules if Ms. Pritt seeks to re-introduce this testimony.

the same, and remand this matter for further proceedings consistent with this Opinion.[11]

During our deliberation and decision of this case, it has come to our attention that the litigation of a cause of action for defamation can prove to be a daunting task for even the most learned jurist or the most experienced counselor. Therefore, in an attempt to clarify this nebulous area of the law, we will briefly set forth the various tenets applicable to the case *sub judice*, pursuant to which remand proceedings should be conducted. First, due to the status of the complainant herein, the case must proceed as directed by the first Syllabus point of *Sprouse v. Clay Communication, Inc.*, 158 W.Va. 427, 211 S.E.2d 674 (1975):

> A candidate for political office is governed by the same rules with regard to recovery for libel [12] as a public official and can sustain an action for libel only if he can prove that: (1) the alleged libelous statements were false or misleading; (2) the statements tended to defame the plaintiff and reflect shame, contumely, and disgrace upon him; (3) the statements were published with knowledge at the time of publication that they were false or misleading or were published with a reckless and willful disregard of truth; and, (4) the publisher intended to injure the plaintiff through the knowing or reckless publication of the alleged libelous material.

(Footnote added). Thus, to sustain a cause of action for defamation, a public official, after establishing the existence of an allegedly defamatory statement, must prove that the statement was (1) false and (2) published with actual malice:

> In order for a public official or a candidate for public office to recover in a libel action, the plaintiff must prove that: (1) there was the publication of a defamatory statement of fact or a statement in the form of an opinion that implied the allegation of undisclosed defamatory facts as the basis for the opinion; (2) the stated or implied facts were false; and, (3) the person who uttered the defamatory statement either knew the statement was false or *knew* that he was publishing the statement in reckless disregard of whether the statement was false.

Syl. pt. 1, *Hinerman v. Daily Gazette Co., Inc.*, 188 W.Va. 157, 423 S.E.2d 560 (1992).

The next step in a public official's defamation case requires the presiding court to ascertain whether the statements complained of are defamatory. "A court must decide initially whether as a matter of law the challenged statements in a defamation action are capable of a defamatory meaning." Syl. pt. 6, *Long v. Egnor*, 176 W.Va. 628, 346 S.E.2d 778 (1986). In making this assessment, the tribunal must also consider whether the allegedly defamatory statements could be construed as statements of opinion. "A statement of opinion which does not contain a provably false assertion of fact is entitled to full constitutional protection." Syl. pt. 4, *Maynard v. Daily Gazette Co.*, 191 W.Va. 601, 447 S.E.2d 293 (1994). "[W]hether a statement is one of fact or opinion is an issue that must be decided initially by a court." Syl. pt. 7, in part, *Long v. Egnor*, 176 W.Va. 628, 346 S.E.2d 778.

Once this hurdle has been overcome, a public official must prove the cause of action's elements. Falsity, the first such element, was explained by this Court in our prior case of *State ex rel. Suriano v. Gaughan*, as follows:

> The law of libel takes but one approach to the question of falsity, regardless of the form of the communication. It overlooks minor inaccuracies and concentrates upon substantial truth. Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified. A statement is not considered false unless it would have a

---

11. Based upon this disposition of the instant appeal, we need not consider further Ms. Pritt's remaining assignments of error.

12. Generally speaking, "defamation" is "[a] false written or oral statement that damages another's reputation." Black's Law Dictionary 427 (7th ed. 1999). The specific type of "defamation" complained of herein is "libel," which is defined as "[a] defamatory statement expressed in a fixed medium, esp. . . . [an] electronic broadcast." *Id.* at 927.

different effect on the mind of the reader from that which the pleaded truth would have produced.

Syl. pt. 4, 198 W.Va. 339, 480 S.E.2d 548 (1996). Actual malice, the second element to be proved in a public official's defamation action, is present if the statement at issue was made "with knowledge that [the statement] was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan,* 376 U.S. 254, 280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686, 706 (1964). *See also* Syl. pt. 1, *Sprouse,* 158 W.Va. 427, 211 S.E.2d 674. "Reckless disregard" has been further defined by the United States Supreme Court in *St. Amant v. Thompson* as indicative that "the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice." 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262, 267 (1968).

 Finally, to establish actual malice, the complaining public official must prove its existence by clear and convincing evidence. "Plaintiffs who are public officials or public figures must prove by clear and convincing evidence that the defendants made their defamatory statement with knowledge that it was false or with reckless disregard of whether it was false or not." Syl. pt. 2, in part, *Suriano,* 198 W.Va. 339, 480 S.E.2d 548. *See also Sullivan,* 376 U.S. at 285–86, 84 S.Ct. at 729, 11 L.Ed.2d at 710 (observing that a public official must prove actual malice with "convincing clarity"). *But see Dodd v.*

*Pearson,* 277 F.Supp. 469, 471 (D.D.C.1967) (requiring public official to prove actual malice by "a fair preponderance of the evidence"). Similarly, "[i]n order for a public official or a candidate for public office to recover in a libel action, he must prove by clear and convincing evidence that ... the stated or implied facts were false." [13] *Hinerman,* 188 W.Va. at 168–69, 423 S.E.2d at 571–72 (citations omitted). *Cf. Harte–Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 661 n. 2, 109 S.Ct. 2678, 2682 n. 2, 105 L.Ed.2d 562, 572 n. 2 (1989) (noting that "[t]here is some debate as to whether the element of falsity must be established by clear and convincing evidence or by a preponderance of the evidence," but concluding that the Court "express[es] no view on this issue"). *But see Rowden v. Amick,* 446 S.W.2d 849, 857 (Mo.Ct.App.1969) (concluding that public official's burden of proof as to falsity and actual malice is by a "preponderance of the evidence" standard).[14] This burden of proof likewise was recognized by Justice Miller in his dissent to the majority's opinion in *Hinerman:*

under First Amendment law, [a public official] plaintiff [has] to prove by clear and convincing evidence each of the ... elements [of libel] to recover damages .... [Thus], the plaintiff [has] to prove that the ... statements were, in the language of *Masson* [ *v. New Yorker Magazine, Inc.*], false or misleading to the extent that the true facts would have produced a " 'different effect on the mind of the reader' " because "[m]inor inaccuracies do not

---

**13.** In her brief, Ms. Pritt contends that a public official need prove only by a preponderance of the evidence that the allegedly defamatory statements were false. However, the cases cited in support of this proposition do not definitively resolve this issue as their only references thereto consist of recitations of jury instructions with no corresponding rulings as to the appropriateness of such a standard therein. *See Estep v. Brewer,* 192 W.Va. 511, 514 n. 3, 453 S.E.2d 345, 348 n. 3 (1994) (per curiam); *Sprouse v. Clay Communication, Inc.,* 158 W.Va. 427, 462 n. 10, 211 S.E.2d 674, 697 n. 10 (1975).

**14.** Although no longer relevant to the instant proceeding given that this case cannot be disposed of summarily, we note that a public official opposing a summary judgment motion must establish his/her *prima facie* case of defamation,

and the elements thereof, by clear and convincing evidence:

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), requires a libel plaintiff who is a public official or a public figure to resist a motion for summary judgment by showing clear and convincing evidence of the defendant's actual malice. That is, the federal (and state) constitutional protections of free speech require a stricter standard of evidence to survive pretrial motions in such cases than is required in other cases.

*Crain v. Lightner,* 178 W.Va. 765, 769 n. 1, 364 S.E.2d 778, 782 n. 1 (1987) (citing *Long v. Egnor,* 176 W.Va. 628, 635–36, 346 S.E.2d 778, 785–86 (1986)).

amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'" [501] U.S. [496,] [517], 111 S.Ct. [2419,] 2433, 115 L.Ed.2d [447,] 472 [ (1991) ] (Citations omitted).

188 W.Va. at 187, 423 S.E.2d at 590.

While the above survey of the law is not intended to be exhaustive, we do hope that it provides the necessary guidance for the continuation of the instant litigation. Thus, it is with great optimism that we have provided this concise rubric in the hope that future proceedings in this case will be fairly and judiciously determined.

### IV.

### CONCLUSION

Because we find genuine issues of material fact rendered summary judgment improper in this matter, we reverse the May 15, 2000, and June 13, 2000, orders of the Circuit Court of Fayette County and remand this case for further proceedings consistent with this Opinion.

Reversed and Remanded.

Justice MAYNARD, deeming himself disqualified, did not participate in the decision of this case.

Judge MADDEN, sitting by temporary assignment.

ALBRIGHT, Justice, concurring.

I fully concur in the judgment of the Court and in Justice Davis' opinion.

I write separately to note disagreement with a position Appellees asserted. Appellees suggested to us, as I understood them, that because the author of the commercials at issue in this case asserted a belief that the information contained in the commercials relating to Appellant's past actions was factually accurate, neither Appellee could be found guilty of malice or be found to have defamed Appellant.

Respectfully, I suggest that the issue is what Appellees, or either of them, knew or should have known regarding the factual content and the context of the commercials. Appellees' appreciation of the factual content

and the context of the commercials springs from the knowledge and experience of the leadership, staff and respective governing bodies of each of the Appellees. What a hired wordsmith knew or should have known is but a part of the picture. Appellees cannot be permitted to hide behind deficiencies in that wordsmith's appreciation of what his commercials said to the public about Appellant.

I am authorized to state that Justice STARCHER joins in this concurring opinion.