IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2020 Term

_____

No. 18-0507

_____

DAVID L. HENZLER,
Petitioner

v.

TURNOUTZ, LLC and LARRY MARKHAM,
Respondents

_____

Appeal from the Circuit Court of Kanawha County
The Honorable James C. Stucky, Judge
No. 16-C-1580

REVERSED AND REMANDED

_____

Submitted: February 18, 2020
Filed: June 12, 2020

FILED
June 12, 2020
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Paul L. Frampton, Jr., Esq.
ATKINSON & POLAK, PLLC
Charleston, West Virginia
Counsel for Petitioner

W. Jesse Forbes, Esq.
FORBES LAW OFFICES, PLLC
Charleston, West Virginia
Counsel for Respondents

JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE WORKMAN dissents and reserves the right to file a separate opinion.

JUSTICE HUTCHISON concurs in part and dissents in part and reserves the right to file a separate opinion.

**SYLLABUS BY THE COURT**

1.      "If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure."  Syllabus Point 3, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995).

2.      "'"A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).' Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992)." Syllabus Point 2, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

3.      "A circuit court's entry of summary judgment is reviewed *de novo*." Syllabus Point 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

WALKER, Justice:

David Henzler (Mr. Henzler) worked as an area supervisor of One Stop convenience stores for nineteen years. He lost that job after Turnoutz, LLC (Turnoutz) leased approximately forty-one of those stores. Mr. Henzler applied for a job with Turnoutz but was not hired. Claiming that he was rejected in favor of younger, less-qualified candidates, Mr. Henzler filed suit against Turnoutz[1] alleging age discrimination in violation of the West Virginia Human Rights Act. Turnoutz moved for summary judgment after approximately eight months of discovery. Turnoutz argued that Mr. Henzler had released any employment-related claims against Turnoutz when he executed a severance agreement and general release with his former employer and its corporate affiliates. The circuit court granted the motion and dismissed Mr. Henzler's age discrimination claim against Turnoutz. But, Mr. Henzler argued then and now argues on appeal that genuine issues of material fact remain as to whether Turnoutz is entitled to the benefit of the severance agreement and general release. We agree with Mr. Henzler: genuine issues of material fact remain as to the applicability of the release agreement to his claim against Turnoutz. So, we find that the circuit court erred in granting summary

---

[1] Mr. Henzler also sued Turnoutz's principal, Larry Markham. We refer to Turnoutz and Mr. Markham collectively as "Turnoutz" throughout this opinion. Our reasoning and conclusion that the circuit court erroneously granted summary judgment to Turnoutz also applies to Mr. Markham. The shortened reference is for the sake of clarity only.

1

judgment to Turnoutz.  We reverse the circuit court's order and remand this matter to the Circuit Court of Kanawha County.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

CrossAmerica Partners, LP (CAP)[2] employed Mr. Henzler as an area supervisor at a chain of One Stop convenience stores for approximately nineteen years. Mr. Henzler lost that job due to a business transaction between Turnoutz and CAP's alleged affiliates, Lehigh Gas Wholesale Services, Inc., and Lehigh Gas Wholesale LLC (collectively, Lehigh), memorialized in a document entitled "Master Lease Agreement," dated September 9, 2015 (eff. September 22, 2015), and its amendments (dated September 22, 2015; February 24, 2016; and April 2016).[3]  Mr. Henzler applied for an equivalent job with Turnoutz, but he did not get it.  Believing that Turnoutz rejected him in favor of younger, less-qualified candidates, Mr. Henzler filed suit against Turnoutz in the Circuit Court of Kanawha County in October 2016 for age discrimination in violation of the West

---

[2] Mr. Henzler alleges that CrossAmerica Partners, LP (CAP) employed him and, in his brief, that M&J Operations LLC (M&J) is the parent corporation of CAP.  The severance agreement and general release at issue in this case identifies both CAP, M&J, and another alleged affiliate, CST Brands, Inc. (CST), as parties to the agreement.  For the sake of clarity, we will refer to these three alleged affiliates as "CAP."

[3] Turnoutz offers the Master Lease Agreement and its amendments as evidence of its relationship with CAP.  Notably, CAP is not a party to the lease or its amendments. Instead, Turnoutz and Lehigh are the parties to the Master Lease Agreement and its amendments.

Virginia Human Rights Act. Turnoutz answered and the parties exchanged interrogatories and requests for production.[4]

After approximately eight months of discovery, Turnoutz moved for dismissal or summary judgment of Mr. Henzler's age discrimination complaint. According to Turnoutz, Mr. Henzler executed a severance agreement and general release on April 13, 2016, with CAP[5] (CAP Release) following his unsuccessful application to Turnoutz for employment. Turnoutz asserted that, in exchange for a severance payment of approximately $13,721.63, Mr. Henzler agreed in the CAP Release to "irrevocably and unconditionally release[] and forever discharge[]" CAP and certain "Company Released Parties"

> from any and all claims, demands, causes of action, and liabilities of any nature, both past and present, known and unknown, resulting from any act or omission of any kind occurring on or before the date of execution of [the CAP Release] which arise under contract or common law, or any federal, state or local law, regulation or ordinance.

The CAP Release defines those "Company Released Parties" as CAP's

> Affiliates . . ., parents, partners, subsidiaries, divisions, assigns, predecessors, and successors (by merger acquisition or otherwise), and the past, present and future officers, directors, trustees, partners, shareholders, managers, employees, agents, representatives, volunteers, consultants, insurers and attorneys

---

[4] Based on our review of the docket contained in the appendix record, neither party conducted a deposition before Turnoutz moved for summary judgment in October 2017. The docket reflects that subpoenas were issued to CAP and Lehigh in late May or early June 2017.

[5] *See supra*, note 2.

of and for each of the foregoing, and their respective heirs, executors, administrators, legal representatives and assigns . . . .[6]

Indisputably, the CAP Release does not name Turnoutz as a "Company Released Party." But, Turnoutz argued that the CAP Release still applied to Mr. Henzler's age discrimination claim because it was CAP's successor (by merger, acquisition, or otherwise) or affiliate. Turnoutz reasoned that it was CAP's successor or affiliate because under the terms of the Master Lease Agreement, its amendments, and various proprietary mark, franchise and fuel agreements (tertiary agreements),[7] Turnoutz "continued, without interruption, the same business operations of [CAP] in the same facilities offering the same services and products with the same equipment and inventory under the same names and brands while employing the same work force who had the same responsibilities as they did under [CAP]." Turnoutz also argued that it was an affiliate of CAP because the Master

---

[6] The CAP Release also defines the term "Affiliate" as "a person or entity that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, the person or entity specified." The CAP Release defines the term "control" as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of another person or entity, whether through the ownership of voting securities, by contract, or otherwise."

[7] Specifically, the Master Lease Agreement states that "[Turnoutz] and an affiliate of [Lehigh Gas Wholesale Services, Inc.], Lehigh Gas Wholesale LLC, have entered into a PMPA Franchise Agreement [sic] Fuel Supply Agreement, Proprietary Marks Agreement and Related Agreements with [Lehigh Gas Wholesale Services, Inc.] and/or its Affiliates . . . applicable to each of the Leased Premises . . . ." The record does not contain these tertiary agreements.

4

Lease Agreement, its amendments, and the tertiary agreements empowered CAP to control Turnoutz's management and policies.

Mr. Henzler responded that the CAP Release did not apply to his claim against Turnoutz because the parties to the CAP Release did not name Turnoutz as an entity released in exchange for the $13,721.63 severance payment. He rejected Turnoutz's claim to be CAP's successor or affiliate, reasoning that Turnoutz merely agreed to lease some One Stop stores from Lehigh, and not CAP, under the Master Lease Agreement and its amendments. He asserted that Turnoutz was, at best, the "tenant" of Lehigh under those agreements. According to Mr. Henzler, even if CAP was a party to the Master Lease Agreement, the landlord-tenant relationship it created did not make Turnoutz a successor of CAP by merger, acquisition, or otherwise. Mr. Henzler likewise rejected Turnoutz's theory that it was CAP's successor due to the resemblance of its operations of the leased One Stop stores to those of CAP because any similarity was the result of Turnoutz's own independent business decisions. Finally, Mr. Henzler argued that Turnoutz had not offered any evidence to support its assertion that it was CAP's affiliate.

The circuit court granted Turnoutz's motion for summary judgment at a December 2017 hearing.[8] Approximately five months later, on May 7, 2018, the circuit

---

[8] The circuit court explained its oral ruling as follows: "the release executed by Mr. Henzler does apply to this case [and] that he has waived his right to make an age discrimination claim against the defendants."

5

court entered an order granting Turnoutz's motion for summary judgment, which Turnoutz had prepared for the court's endorsement. The circuit court found that Mr. Henzler had discharged Turnoutz from liability for his age discrimination claim when he executed the CAP Release, even though Turnoutz was not a party to that agreement. Specifically, the circuit court found that Turnoutz and

> Larry Markham are successors in interest to and/or assigns, affiliates, and/or "Company Released Parties" and/or heirs of [CAP] by virtue of the aforesaid contractual franchise agreements and/or contractual lease agreements and the amendments thereto, entered between [Turnoutz, Lehigh, and CAP], and such contractual agreements as are of record in this Court.

The court also found that the CAP Release "clearly contemplated that the claims made by [Mr. Henzler] in the case at bar were forever released and discharged against [Turnoutz] as successors, affiliates, and/or otherwise as 'Company Released Parties' as defined therein." The court concluded that "no genuine issue of material fact exists related to the application of the [CAP Release] to [Mr. Henzler's] claims against [Turnoutz], and the terms and conditions of the release agreement constitute undisputed facts upon which [Turnoutz is] entitled to summary judgment as a matter of law." Mr. Henzler appeals from that order.

## II. STANDARD OF REVIEW

West Virginia Rule of Civil Procedure 56(c) states that a court shall render "judgment . . . forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue

6

as to any material fact and that the moving party is entitled to a judgment as a matter of law." We explained the relative burdens of the moving and non-moving parties at summary judgment in Syllabus Point 3 of *Williams v. Precision Coil, Inc.*, when we said that:

> If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.[9]

At summary judgment, a court may not peremptorily "weigh the evidence and determine the truth of the matter . . . ."[10] Instead, it must "grant the nonmoving party the benefit of inferences, as credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."[11] A court should grant "[a] motion for summary judgment . . . only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."[12] Alternatively stated, "[s]ummary

---

[9] 194 W. Va. 52, 459 S.E.2d 329 (1995).

[10] *Pritt v. Republican Nat.'l Comm.*, 210 W. Va. 446, 453, 557 S.E.2d 853, 860 (2001) (internal quotation omitted).

[11] *Id.* (internal quotation omitted).

[12] Syl. Pt. 2, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994) (internal quotations and citations omitted).

judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party . . . ."[13]

Turnoutz relies on the CAP Release for its affirmative defense, meaning that it will bear the burden of proving that defense at trial. Therefore, it is "entitled to summary judgment on this affirmative defense only if the evidence is so strong that it would be entitled to a directed verdict at trial."[14] "This burden is very heavy and summary judgment rarely is granted in favor of the party having the burden of proof."[15] "A circuit court's entry of summary judgment is reviewed *de novo*."[16]

## III.  DISCUSSION

The parties' arguments on appeal mirror those presented to the circuit court.[17] Turnoutz argues that Mr. Henzler released his age discrimination claim against it when he

---

[13] *Id.* at Syl. Pt. 4 (in part).

[14] *Grim v. E. Elec., LLC*, 234 W. Va. 557, 567, 767 S.E.2d 267, 277 (2014). *See also Williams*, 194 W. Va. at 62 n.17, 459 S.E.2d at 339 n.17 (1995) (when reviewing an order on summary judgment, the Court "normally operate[s] under the assumption that a plaintiff will have the burden of proof at the trial on the merits. Obviously, in these cases a plaintiff only is entitled to summary judgment where his evidence is so strong that he would be entitled to a directed verdict at trial. *This burden is very heavy and summary judgment rarely is granted in favor of the party having the burden of proof.* The situation for a defendant usually is different. *Except as to affirmative defenses, a defendant does not bear the burden of proof.*") (emphasis added).

[15] *Williams*, 194 W. Va. at 62 n.17, 459 S.E.2d at 339 n.17.

[16] Syl. Pt.1, *Painter*, 192 W. Va. at 189, 451 S.E.2d at 755.

[17] Turnoutz asserts a new argument in response to Mr. Henzler's appeal of the circuit court's order granting summary judgment to Turnoutz:  that Mr. Henzler has not made a

8

executed the CAP Release even though that agreement does not name Turnoutz as a released party. Turnoutz argues that the circuit court correctly found that the CAP Release applies to CAP's successors and affiliates and that it is, in fact, a successor to or affiliate of that entity.[18] On the other hand, Mr. Henzler contends that the CAP Release applies to Turnoutz only if (1) the parties to the release had named Turnoutz as an entity released from liability to Mr. Henzler, or (2) Turnoutz is an affiliate of or successor to CAP, and, therefore a Company Released Party as the CAP Release defines that term. Turnoutz is not named in the CAP Release, and, Mr. Henzler argues, it did not offer any evidence to the circuit court to support its claim that it is CAP's successor or affiliate. So, Mr. Henzler concludes, the circuit court erred when it found that no genuine issues of material fact remain as to the applicability of the CAP Release to Mr. Henzler's claims against Turnoutz.

We agree with Mr. Henzler: on the record presented to the circuit court and now to this Court, genuine issues of material fact remain as to the applicability of the CAP

---

prima facie case of age discrimination. "Our general rule is that nonjurisdictional questions not raised at the circuit court level, but raised for the first time on appeal, will not be considered." *Barney v. Auvil*, 195 W. Va. 733, 741, 466 S.E.2d 801, 809 (1995). For that reason, we do not consider Turnoutz's argument that Mr. Henzler has not established a prima facie case of age discrimination.

[18] Turnoutz's substantive arguments below focused on its status as a successor to or affiliate of CAP, although it also made blanket assertions that it is otherwise a Company Released Party, as the CAP Release defines that term. *See supra.* On appeal, Turnoutz's focus remains on its successor or affiliate status. For the same reasons discussed in the body of this opinion, we conclude that genuine issues of material fact also remain as to whether Turnoutz is a Company Released Party, as the CAP Release defines that term, by means other than its status as CAP's successor or affiliate.

Release to Mr. Henzler's claim against Turnoutz. Indisputably, the parties to the CAP Release — CAP and Mr. Henzler — did not identify Turnoutz as a party released by Mr. Henzler in exchange for the $13,721.63 severance payment. Without additional, affirmative evidence to support Turnoutz's claim that the CAP Release applies to Mr. Henzler's claims against it, the omission of Turnoutz's name from that agreement raises genuine issues of material fact that have yet to be resolved, at least at the relatively early stage of the proceeding at which Turnoutz moved for summary judgment.

We reach the same conclusion, and for the same reasons, as to Turnoutz's more narrow argument that it is CAP's successor (by merger, acquisition, or otherwise). As Mr. Henzler observes, Turnoutz has not highlighted any record evidence related to a CAP merger or acquisition. And, genuine issues of material fact remain as to whether Turnoutz is otherwise CAP's successor. Turnoutz cites to the Master Lease Agreement and its amendments, the tertiary agreements, and its own discovery responses to substantiate its argument that it is a successor to CAP due to its continuance of CAP's operations of the One Stop stores. While Turnoutz posits that the Master Lease Agreements render it CAP's successor, it has not directed our attention to any particular provision of that agreement to support that supposition.[19] Plus, the record does not contain the tertiary agreements. More fundamentally, Turnoutz has not pointed to anything in the

---

[19] Similarly, Turnoutz makes a blanket reference to its responses and objections to Mr. Henzler's first set of interrogatories and requests for production of documents. It does not, however, cite to a particular response in that document or explain how information in the document supports its contention that it is CAP's successor or affiliate.

current record that evidences the exact nature of the relationship between CAP and Lehigh or affirmatively shows that Lehigh shares with CAP its obligations to Turnoutz under the Master Lease Agreement.[20]

Turnoutz repeatedly cites paragraph 7 of Mr. Henzler's complaint as affirmative evidence that it is CAP's successor. Mr. Henzler alleged in that paragraph that, "[i]n 2016, [CAP] entered into an agreement whereby [Turnoutz] would lease the forty-one convenience store locations previously operated by [CAP] and [Turnoutz] would operate convenience stores out of those locations." Relying on that allegation, Turnoutz concludes that Mr. Henzler has admitted that it "is a successor, affiliate, and/or assign of CAP . . . ." But that conclusion rests on two suppositions: that (1) the relationship between CAP and Lehigh put CAP in the shoes of Lehigh for purposes of the Master Lease Agreement and (2) the terms of the Master Lease Agreement make Turnoutz CAP's successor by means other than merger or acquisition. Again, Turnoutz has not pointed us to any portion of the record that evidences the relationship between CAP and Lehigh. And,

---

[20] Turnoutz states that the parties do not dispute that Lehigh and CAP are affiliates and that they are part of the same corporate family. But, Mr. Henzler emphasized the designation of Lehigh, and not CAP, as Turnoutz's landlord in the Master Lease Agreement in his response to Turnoutz's motion for summary judgment. Mr. Henzler emphasized the same discrepancy in his appeal, stating that "the parties to the Master Lease Agreement and subsequent amendments are [Turnoutz] and a completely different entity, [Lehigh]. . . . There is nothing in the Master Lease Agreement between [Turnoutz] and [Lehigh] that can be construed to make [Turnoutz] a successor, assign, affiliate, or heir of [CAP]." Further, that CAP may have been known formerly as Lehigh Gas Partners, LP, is not affirmative evidence that CAP is a signatory to the Master Lease Agreement and its amendments because Turnoutz made those agreements with different Lehigh entities (Lehigh Gas Wholesale Services, Inc. and Lehigh Gas Wholesale, LLC).

11

Turnoutz has not directed our attention to any particular provision of the Master Lease Agreement or its amendments that dispels all genuine issues of material fact as to its status as CAP's successor for purposes of the CAP Release.

And, while the Master Lease Agreement and two of its amendments refer (without any description) to the tertiary agreements and identify Turnoutz as the "franchisee" of Lehigh, the record does not contain any of those tertiary agreements. Without those tertiary agreements or citations to particular portions of the record evidencing how they empowered CAP to control the management and operations of Turnoutz, genuine issues of material fact remain as to Turnoutz's status as CAP's affiliate for purposes of the CAP Release.

We have observed that "[s]ummary judgment should be denied 'even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom.'"[21] There is no genuine issue of material fact as to the existence of the CAP Release and the Master Lease Agreement and its amendments. But, as the record has been developed so far, disputes remain as to the conclusions to be drawn from those documents. So, we conclude that the circuit court erred when it found that no genuine issues of material fact existed as to the application of the CAP Release to Mr. Henzler's

---

[21] *Pritt*, 210 W. Va. at 453, 557 S.E.2d at 860 (quoting *Pierce v. Ford Motor Co.*, 190 F.2d 910, 915 (4th Cir.), *cert. denied*, 342 U.S. 887 (1951)).

12

claims against Turnoutz, and that Turnoutz was entitled to summary judgment as a matter of law.

## IV. CONCLUSION

For the reasons stated above, we reverse the circuit court's order granting summary judgment to Turnoutz and remand this case to the Circuit Court of Kanawha County for further proceedings.

Reversed and remanded.