680 S.E.2d 66

**Terry HILL, Plaintiff Below, Appellant**

v.

**Gregory Brent STOWERS, Defendant Below, Appellee.**

**No. 34143.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 24, 2009.

Decided May 19, 2009.

---

Robert A. Goldberg, Esq., Goldberg Law Office, Larry G. Kopelman, Esq., Kopelman & Associates, LC, Charleston, WV, for Appellant.

Robert B. Allen, Esq., Stephanie D. Thacker, Esq., Allen Guthrie & Thomas, PLLC, Charleston, WV, for Appellee.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Lincoln County entered on October 1, 2007, dismissing a complaint filed by the appellant and plaintiff below, Terry Hill, against the appellee and defendant below, Gregory Stowers. Mr. Hill alleged that he was defeated in the 1996 general election for Circuit Clerk of Lincoln County as a result of Mr. Stowers's illegal vote-buying activities. Mr. Hill sought monetary damages. The circuit court dismissed Mr. Hill's complaint pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure [1] finding that a candidate for public office does not have a property right to win an election; that the cause of action asserted by Mr. Hill does not exist; that it would be contrary to public policy to allow a losing candidate in an election to collect monetary damages from his opponent; and that Mr. Hill's exclusive remedy was to file an election contest.

In this appeal, Mr. Hill seeks reinstatement of his lawsuit. He also contends that the Honorable Jay M. Hoke, Judge of the Circuit Court of Lincoln County who presided over this case below, should be disqualified and that a different circuit judge should be appointed to the case. This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set forth below, the final order is affirmed.

1. See note 5, infra.

## I.

### FACTS

During the 1996 general election for the Office of Circuit Clerk of Lincoln County, Mr. Hill and Mr. Stowers conducted write-in campaigns. Mr. Stowers was the incumbent because he had been appointed to fill the office several months earlier when the former circuit clerk, Shirley Mullins, retired and withdrew from the election as the Democrat nominee.[2] Mr. Stowers was declared the winner in the 1996 election with a margin of victory of approximately 600 votes. Mr. Hill did not contest the election. Mr. Stowers was re-elected in 2000 and 2004.[3]

On December 29, 2005, Mr. Stowers pled guilty in the United States District Court for the Southern District of West Virginia to one count of buying votes[4] in connection with the May 2004 primary election in Lincoln County. He was sentenced to six months in prison. Thereafter, on June 5, 2006, Mr. Hill filed this lawsuit against Mr. Stowers alleging that Mr. Stowers won the 1996 election because of unlawful vote-buying. In particular, the complaint alleged that

> [o]n or about May 4, 2005, defendant Gregory B. Stowers and others, were indicted by a federal grand jury pursuant to a Second Superseding Indictment alleging that defendant Gregory B. Stowers knowingly conspired and undertook actions of knowing and willfully paying and offering to pay voters in Lincoln County for voting in various elections since the Spring of 1990 including but not limited to the general election of 1996 for the office of Clerk of the Circuit Court of Lincoln County.

Mr. Hill asserted that Mr. Stowers had violated his constitutional right to run for and hold public office; that Mr. Stowers had violated statutory law in West Virginia pertaining to the administration of elections; that Mr. Stowers had been unjustly enriched and had improperly benefitted from the compensation, benefits, and emoluments of office; and that Mr. Stowers had violated substantial public policy in West Virginia pertaining to free and fair elections. Mr. Hill sought compensatory damages, punitive damages, and attorney's fees and costs.

After the complaint was filed, Mr. Hill moved to disqualify the Honorable Jay M. Hoke as the presiding circuit court judge in this matter. Judge Hoke declined to voluntarily disqualify himself. The Chief Justice of this Court then refused the motion to disqualify on three separate occasions. Thereafter, by order entered on October 1, 2007, the circuit court dismissed Mr. Hill's complaint pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. This appeal followed.

## II.

### STANDARD OF REVIEW

As set forth above, the circuit court dismissed Mr. Hill's complaint pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure.[5] This Court has explained that "[t]he purpose of a motion under Rule 12(b)(6) of the *West Virginia Rules of Civil Procedure* is to test the sufficiency of the complaint. A trial court considering a motion to dismiss under Rule 12(b)(6) must liberally construe the complaint so as to do

---

2.  There was no Republican nominee.

3.  It appears that Mr. Hill did not seek the office in 2000 or 2004.

4.  Mr. Stowers pled guilty to violating 18 U.S.C. § 597 (1996) (2006 ed.) which provides:
    Whoever makes or offers to make an expenditure to any person, either to vote or withhold his vote, or to vote for or against any candidate; and
    Whoever solicits, accepts, or receives any such expenditure in consideration of his vote or the withholding of his vote
    Shall be fined under this title or imprisoned not more than one year, or both; and if the

violation was willful, shall be fined under this title or imprisoned not more than two years, or both.

5.  Rule 12(b)(6) of the West Virginia Rules of Civil Procedure provides, in pertinent part:

    Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion ... (6) failure to state a claim upon which relief can be granted[.]

substantial justice." *Cantley v. Lincoln County Comm'n*, 221 W.Va. 468, 470, 655 S.E.2d 490, 492 (2007). "Since the preference is to decide cases on their merits, courts presented with a motion to dismiss for failure to state a claim construe the complaint in the light most favorable to the plaintiff, taking all allegations as true." *Sedlock v. Moyle*, 222 W.Va. 547, 550, 668 S.E.2d 176, 179 (2008). Therefore, "[t]he trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)." Syllabus Point 3, *Chapman v. Kane Transfer Co., Inc.*, 160 W.Va. 530, 236 S.E.2d 207 (1977). This Court's review of a circuit court's dismissal of a complaint pursuant to Rule 12(b)(6) is plenary. In other words, "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syllabus Point 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995).

### III.

### DISCUSSION

Mr. Hill's complaint sets forth four separate claims against Mr. Stowers. Each claim will be discussed, in turn, below.

#### A. Constitutional Claim

Mr. Hill first contends that the circuit court erred by finding that he does not have a valid state constitutional claim against Mr. Stowers. Based upon this Court's decision in *State ex rel. Billings v. The City of Point Pleasant*, 194 W.Va. 301, 460 S.E.2d 436 (1995), Mr. Hill argues that he had a fundamental constitutional right to run for political office in a free and unrestricted electoral process. Essentially, Mr. Hill maintains that Mr. Stowers destroyed the free, lawful, and open electoral process in Lincoln County for many years by buying votes and interfered with his right to run for the office of circuit clerk in an unfettered election. Thus, Mr. Hill reasons that Mr. Stowers's actions give rise to a state constitutional claim which this Court must recognize and protect.

In Syllabus Point 2 of *Billings*, this Court held that "[t]he West Virginia Constitution confers a fundamental right to run for public office, which the State cannot restrict unless the restriction is necessary to accomplish a legitimate and compelling governmental interest." In that case, Brian Billings brought an original mandamus proceeding in this Court challenging the constitutionality of W. Va.Code § 3–5–7(b)(6) (1991), which provided that a candidate for public office must file with a designated clerk a "certificate of announcement" that included the name of the candidate's political party and a statement verifying that the candidate " 'has not been registered as a voter affiliated with any other political party for a period of sixty days before the day of filing the announcement.' " 194 W.Va. at 302, 460 S.E.2d at 437 (quoting W. Va.Code § 3–5–7(b)(6)). Mr. Billings sought to become a candidate for the office of councilman-at-large in the City of Point Pleasant. During the same month that he filed his certificate of announcement, Mr. Billings changed his party affiliation from Republican to Democrat and, thus, failed to comply with W. Va.Code § 3–5–7(b)(6). The Chairman of the Point Pleasant City Republican Executive Committee filed a complaint with the City Clerk seeking to remove Mr. Billings from the ballot. Anticipating that his name was going to be removed from the ballot, Mr. Billings petitioned this Court for a writ of mandamus and challenged the constitutionality of the statute.

Our decision in *Billings* simply addressed the issue of whether a person has an absolute right to be placed upon the ballot as a candidate for public office and whether in certain circumstances, the State can restrict that right. This Court ultimately held:

The provision in W.Va.Code, 3–5–7(b)(6) (1991), which effectively disqualifies from running for political office individuals who change their political party affiliation within sixty days of filing their announcements of candidacy, is necessary to accomplish the compelling governmental interest in preserving the integrity of the political process, promoting party stability, and

avoiding voter confusion. The provision, therefore, does not violate either the fundamental right of candidacy or the right to change political party affiliations.

Syllabus Point 4, *Billings*. Unlike Mr. Billings, Mr. Hill did have access to the ballot. Both he and Mr. Stowers conducted write-in campaigns. Thus, the decision in *Billings* does not support Mr. Hill's argument that he has a "constitutional claim" against Mr. Stowers. While this Court recognized in *Billings* that our State Constitution confers a fundamental right to run for public office, the decision does not provide the basis for a private cause of action for monetary damages by a losing candidate in an election for public office even in situations involving alleged fraud.

The facts and circumstances of the instant case are more analogous to those in *Shields v. Booles*, 238 Ky. 673, 38 S.W.2d 677 (1931). In that case, B.F. Shields sued W.W. Booles after he lost the 1929 Democratic primary election for State Senator in the Twentieth Senatorial District in Kentucky. Mr. Shields alleged that Mr. Booles, who was awarded the certificate of nomination, and his campaign manager entered into a conspiracy with other unknown persons to procure large sums of money to be used in circulating false, malicious, and scandalous statements concerning Mr. Shields in order to bring about his defeat and secure the nomination for Mr. Booles. Mr. Shields also alleged that some of the money was used to bribe voters. Mr. Shields sought to recover $5,000.00 for compensatory damages and $20,000.00 for punitive damages. He never contested Mr. Booles's nomination.

With regard to the allegations concerning the bribery of voters, the Kentucky court found that no cause of action for damages was manifested. The court explained that

[i]t is not an actionable injury to the character, person, or property of a candidate for office for his adversary to bribe voters. It is an offense to be redressed in a prosecution by the commonwealth, or in a contest of the nomination where the wrongdoer may be deprived of the fruits of his wrong.

. . . .

[A] candidate is not the injured party, or within the purpose o[r] purview of the remedy allowed a voter for being deprived wrongfully of his right to vote. Nor was the right of appellant to be a candidate in the primary infringed or affected. That right was fully enjoyed by the appellant. A violation of his right to receive any votes that might have been cast for him but for the wrongful interference of appellees did not result in any injury to his character, person, or property that could be the subject of a suit for damages. The remedy for wrongs of that character, if carried to an extent that affected the result of the election, was for the unsuccessful candidate to institute a contest, where he could protect his own rights, and vindicate the rights of the public as well. His abstract right to be elected was conditioned upon his ability to get a majority of the votes.

238 Ky. at 679–81, 38 S.W.2d at 679–80.

Like the Kentucky court, we find that the remedy for Mr. Stowers's violations of law lies in criminal prosecution, and the remedy for a candidate such as Mr. Hill is the right to contest the election in the manner provided by the Constitution and state statutes. In that regard, Article IV, Section 11 of the Constitution of West Virginia provides:

The legislature shall prescribe the manner of conducting and making returns of elections, and of determining contested elections; and shall pass such laws as may be necessary and proper to prevent intimidation, disorder or violence at the polls, and corruption or fraud in voting, counting the vote, ascertaining or declaring the result, or fraud in any manner, upon the ballot.

Pursuant to this constitutional provision, our Legislature enacted Chapter 3 of the West Virginia Code, known as the "West Virginia Election Code," which, *inter alia*, sets forth the process for contesting the results of an election. W.Va.Code §§ 3–1–1 to 3–11–6 (Repl. Vol. 2006 & Supp. 2008). Therefore, as a candidate for public office, Mr. Hill could have filed an election contest. There is simply no legal basis for Mr. Hill's contention that the West Virginia Constitution allows him to pursue a private cause of action for

damages against Mr. Stowers. Mr. Hill did not suffer an injury to his character, person, or property as a result of Mr. Stowers's vote-buying activities. Long ago, the United States Supreme Court recognized that "public offices are mere agencies or trusts, and not property, as such ... generally speaking, the nature of the relation of a public office to the public is inconsistent with either a property or contract right." *Taylor v. Beckham*, 178 U.S. 548, 577, 20 S.Ct. 890, 900–01, 44 L.Ed. 1187, 1200 (1900).

### B. Statutory Claim

■ Next, Mr. Hill asserts that the circuit court erred by finding that he does not have a statutory claim against Mr. Stowers pursuant to W. Va.Code § 55-7-9 (1923) (Repl. Vol. 2008), which provides:

> Any person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed, unless the same be expressly mentioned to be in lieu of such damages.

Mr. Hill contends that Mr. Stowers violated W. Va.Code §§ 3-8-11 (1995) (Repl. Vol. 2006), 3-9-12 (1963) (Repl. Vol. 2006), and 3-9-13 (1978) (Repl. Vol. 2006) which forbid any improper influence upon elections, prohibit bribery by candidates as well as the buying and selling of votes, and provide criminal penalties for such actions.[6] Mr. Hill argues that these statutes give rise by implication to a private cause of action in favor of a candidate who has been denied public office against a person who has committed these offenses. Mr. Hill maintains that this Court recognized such a cause of action in *Pritt v. Republican National Committee*, 210 W.Va. 446, 557 S.E.2d 853 (2001). We disagree.

Following an unsuccessful bid for Governor of West Virginia in 1996, Charlotte Pritt brought suit against various Republican political organizations, including the Republican National Committee, alleging that they com-

---

6. W. Va.Code § 3-8-11 provides, in pertinent part:

(a) Any person who shall, directly or indirectly, by himself, or by any other person on his behalf, make use of, or threaten to make use of, any force, violence or restraint, or *inflict, or threaten to inflict, any damage, harm or loss, upon or against any person, or by any other means attempt to intimidate or exert any undue influence, in order to induce such person to vote or refrain from voting, or on account of such person having voted or refrained from voting, at any election, or who shall, by abduction, duress or any fraudulent device or contrivance, impede or prevent the free exercise* of the suffrage by any elector, or shall thereby compel, induce or prevail upon any elector either to vote or refrain from voting for or against any particular candidate or measure

...

....

Is guilty of a misdemeanor, and, on conviction thereof, *shall be fined not more than ten thousand dollars, or confined in jail for not more than one year, or, in the discretion of the court, shall be subject to both such fine and imprisonment.*

W. Va.Code § 3-9-12 states:

Whoever, being a candidate for any office, loans or gives, directly or indirectly, or offers or promises to loan, or give, any money, or other thing of value, to any elector, for the purpose of influencing or retaining the vote of such elector, or inducing such elector to work or labor for the election of such candidate, or to refrain from working or laboring for the election of any other candidate; or to any person to secure or to retain the influence or vote of such elector, in his behalf as such candidate, or to be used by such person in any way to influence the vote of any elector, or of electors generally, for himself or any candidate *or ticket, shall be guilty of a misdemeanor,* and, on conviction thereof, shall be fined not more than one thousand dollars, or confined in the county jail for not more than one year, or both, in the discretion of the court.

W. Va.Code § 3-9-13 states:

(a) It is unlawful for any person to offer or to pay money or any other thing of value to any person as consideration for the vote of the offeree or payee, as the case may be, to be cast for or against any candidate or issue in any election held in the state. Any person who violates the provisions of this subsection shall be guilty of a felony, and, upon conviction thereof, shall be fined not less than five thousand dollars or imprisoned for a period of not less than one year, nor more than five years, or both.

(b) It is likewise unlawful for any person to accept or agree to accept money or other thing of value as consideration for the vote of the acceptee, to be cast for or against any candidate or issue in any election held in the state. *Any person who violates the provisions of this* subsection shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than one hundred dollars nor more than one thousand dollars or imprisoned in the county jail not more than one year, or both.

mitted common law libel, slander, and defamation by publishing false and injurious statements about her during the gubernatorial campaign. After discovery was completed, the circuit court granted summary judgment in favor of the defendants finding that the statements at issue were not false and that there was no evidence that any defendant acted with "actual malice." Upon appeal, this Court reversed that decision, concluding that there were genuine issues of material fact concerning whether the alleged defamatory statements were "tainted with falsity" or "laced with malice." *Id.* at 453, 557 S.E.2d at 860.

A review of the case shows that Ms. Pritt alleged in her complaint that the defendants had violated W. Va.Code § 3–8–11(c). *Id.* at 450, 557 S.E.2d at 857. Contrary to Mr. Hill's contention, however, this Court did not recognize a private cause of action pursuant to W. Va.Code § 55–7–9 as a result of a violation of W. Va.Code § 3–8–11(c) in the *Pritt* decision. That issue was not presented to this Court. Furthermore, it does not appear that Ms. Pritt ever asserted that theory as a basis for recovery against the defendants. Thus, Mr. Hill's reliance upon *Pritt* is misplaced.

Long ago, "[i]n *England v. Central Pocahontas Coal Co.,* 86 W.Va. 575, 104 S.E. 46 (1920), we suggested that the purpose of [W. Va.Code § 55–7–9] was to preserve the right to bring a cause of action based on the violation of a statute in those situations where the statute contained a penalty or forfeiture, so as to preclude the assertion that the penalty or forfeiture prevented the bringing of a damage action." *Jenkins v. J.C. Penney Cas. Ins. Co.,* 167 W.Va. 597, 600, 280 S.E.2d 252, 254–55 (1981), *overruled, in part, on other grounds by State ex rel. State Farm Fire & Cas. Co. v. Madden,* 192 W.Va. 155, 451 S.E.2d 721 (1994) *and superseded by* W. Va.Code § 33–11–4a (2005) (Repl. Vol. 2006). Since then, this Court has on several occasions considered whether the violation of a given statute creates an implied private cause of action. For example, in *Hurley v. Allied Chemical Corp.,* 164 W.Va. 268, 262 S.E.2d 757 (1980), this Court found that W.Va.Code § 27–5–9(a), which provides

that no person may be deprived of any civil right solely by reason of his or her receipt of services for mental illness, created an implied cause of action against a private employer who allegedly denied employment to an otherwise qualified individual because that person had received services for mental illness. By contrast, this Court found in *Arbaugh v. Board of Education, the County of Pendleton,* 214 W.Va. 677, 591 S.E.2d 235 (2003), that W.Va.Code § 49–6A–2 (2001) (Repl. Vol. 2001), which provides criminal penalties for failure to report suspected child abuse, did not create a private cause of action against persons with a duty to report under the statute who allegedly had reasonable cause to suspect that a child was being abused but failed to report their suspicions. *See also Anderson v. Moulder,* 183 W.Va. 77, 394 S.E.2d 61 (1990) (selling beer to a person under twenty-one years of age in violation of W. Va.Code 11–16–18(a)(3) gives rise to a cause of action against the licensee in favor of a purchaser or a third party injured as a proximate result of the unlawful sale); *Yourtee v. Hubbard,* 196 W.Va. 683, 474 S.E.2d 613 (1996) (a person who steals an automobile is not within the class of persons that the Legislature designed the unattended motor vehicle statute to benefit and cannot bring an action based on a violation of W.Va.Code § 17C–14–1 (1951)).

To determine whether a private cause of action exists based on a violation of a statute, this Court set forth a four-part test in *Hurley.* Syllabus Point 1 of *Hurley* provides that

> [t]he following is the appropriate test to determine when a State statute gives rise by implication to a private cause of action: (1) the plaintiff must be a member of the class for whose benefit the statute was enacted; (2) consideration must be given to legislative intent, express or implied, to determine whether a private cause of action was intended; (3) an analysis must be made of whether a private cause of action is consistent with the underlying purposes of the legislative scheme; and (4) such private cause of action must not intrude into an area delegated exclusively to the federal government.

Applying the *Hurley* test to the case at hand, the first consideration is whether Mr. Hill is within the class of persons that the statutes at issue were meant to benefit. W.Va.Code §§ 3–8–11, 3–9–12, and 3–9–13 were clearly enacted to protect a person's right to vote freely for the candidate of his or her choice. As both a candidate and a voter, it is obvious that Mr. Hill is a member of the class that the statutes were meant to benefit. It is equally obvious that a private cause of action would not intrude into an area delegated exclusively to the federal government. "[F]ederal courts do not sit to award post-election damages to defeated candidates." *Hutchinson v. Miller*, 797 F.2d 1279, 1287 (4th Cir.1986). Thus, the first and fourth elements of *Hurley* are easily satisfied. However, the same cannot be said for the second and third parts of the test.

The second and third elements of the *Hurley* test require a close examination of the statutes at issue. With regard to the second element, a determination must be made as to whether the Legislature intended a private cause of action to exist. This Court is unaware of any legislative history pertaining to W. Va.Code §§ 3–8–11, 3–9–12, and 3–9–13. Even if such history did exist, it would not necessarily be helpful because as this Court pointed out in *Hurley*, "the omission of an express right of action in the statute typically occurs against a background of legislative silence or ambiguity on this question." 164 W.Va. at 279, 262 S.E.2d at 763. Thus, the context in which the statutes were enacted must be considered.

The statutes at issue are a part of the West Virginia Election Code which "contemplates and comprehends a code of laws for the establishment, administration and regulation of elections and election procedures in the state of West Virginia." W. Va.Code § 3–1–1 (1963) (Repl. Vol. 2006). As previously discussed, the West Virginia Election Code also sets forth a process for contesting elections. Of particular relevance in this instance is W. Va.Code § 3–7–6 (1995) (Repl. Vol. 2006) which provides that

[a] person intending to contest the election of another to any county or district office, including judge of any court or any office that shall hereafter be created to be filled by the voters of the county or of any magisterial or other district therein, shall, within ten days after the result of the election is certified, give the contestee notice in writing of such intention and a list of the votes he will dispute, with the objections to each, and of the votes rejected for which he will contend.

Further examination of Article 7 of Chapter 3 of the West Virginia Code reveals a comprehensive and detailed procedure which allows a losing candidate to dispute the results of an election. Absent within this statutory scheme is any indication that the Legislature contemplated any other mechanism such as a private cause of action to challenge the results of an election even where there is an allegation of election fraud. Accordingly, under these circumstances, this Court cannot conclude that the Legislature intended that violations of the statutes at issue would give rise to a private cause of action.

When the third part of the *Hurley* test is considered, it is clear that a private cause of action is not implicated. The third part of the test requires a consideration of whether a private cause of action would be consistent with the underlying purposes of the legislative scheme. The statutes at issue were enacted for the purpose of imposing criminal sanctions on persons who improperly influence voters in an election. As discussed, these statutes are part of the Election Code which also includes the procedure for challenging the results of an election. Given that fact, this Court finds that the creation of a private cause of action based upon these statutes would only serve to usurp the legislative scheme. Essentially, this Court would be creating an alternative means by which an unsuccessful candidate could contest the results of an election and providing a private cause of action for damages to one individual for conduct violative of the rights of the citizenry at large. Not only would there be the potential for the outcome of such a private cause of action to be at odds with the certified results of the election at issue, there would be the potential for no finality to any

election.[7]

It is clear that if this Court were to find that a private cause of action exists under these circumstances, a whole new field of tort liability would be created without any express legislative authorization. " '[I]t is not the province of the courts to make or supervise legislation, and a statute may not, under the guise of interpretation, be modified, revised, amended, distorted, remodeled, or rewritten[.]' " *State v. Richards,* 206 W.Va. 573, 577, 526 S.E.2d 539, 543 (1999) (quoting *State v. General Daniel Morgan Post No. 548, V.F.W.,* 144 W.Va. 137, 145, 107 S.E.2d 353, 358 (1959) (citation omitted)). Accordingly, this Court finds that conduct which constitutes violations of W. Va.Code §§ 3-8-11, 3-9-12, and 3-9-13 does not give rise to an implied private cause of action in addition to the criminal penalties imposed therein.

### C. Unjust Enrichment Claim

Mr. Hill also contends that the circuit court erred by finding that he does not have a claim against Mr. Stowers for unjust enrichment. Mr. Hill argues that Mr. Stowers was unjustly enriched because he reaped the benefits of an office to which he was not lawfully elected. In other words, Mr. Hill asserts that the 1996 election for Circuit Clerk of Lincoln County was rendered void because votes were illegally obtained, and therefore, Mr. Stowers was not entitled to the salary and benefits he received. As the opposing candidate, Mr. Hill asserts that he was directly harmed and, thus, has a valid cause of action for unjust enrichment.

In considering Mr. Hill's argument, a brief examination of the concept of unjust enrichment is necessary. In Syllabus Point 4 of *Prudential Ins. Co. of America v. Couch,* 180 W.Va. 210, 376 S.E.2d 104 (1988), this Court held:

> It is generally recognized in the law of restitution that if one party pays money to

another party (the payee) because of a mistake of fact that a contract or other obligation required such payment, the party making the payment is entitled to repayment of the money from the payee.

In so holding, this Court explained in *Prudential* that "[t]he theoretical basis for this principle is that it would be unjust to allow a person to retain money on which he had no valid claim. He would be unjustly enriched thereby, when in equity and justice it should be returned to the payor." *Id.* at 214, 376 S.E.2d at 108. In this case, it appears that Mr. Stowers was elected in 1996 because he illegally obtained votes.[8] Mr. Hill, however, was not the payor of the salary and benefits that Mr. Stowers received as circuit clerk. Accordingly, there is simply no basis to allow Mr. Hill to pursue a claim against Mr. Stowers for unjust enrichment.

### D. Public Policy Claim

Finally, Mr. Hill contends that the circuit court erred by finding that he does not have a cause of action against Mr. Stowers based on a violation of public policy. In support of his argument, Mr. Hill relies upon this Court's decision in *Harless v. First National Bank in Fairmont,* 162 W.Va. 116, 246 S.E.2d 270 (1978). In that case, a former at-will bank employee, John Harless, filed suit against his former employer, the First National Bank in Fairmont, and its vice presidents, alleging that he had been fired because of his attempts to require the bank to comply with state and federal consumer credit protection laws. The circuit court dismissed the complaint filed by Mr. Harless finding that he had failed to state a cause of action and certified its decision to this Court. Upon review, this Court found that Mr. Harless had set forth a valid cause of action. This Court concluded that

> the Legislature intended to establish a clear and unequivocal public policy that consumers of credit covered by the [West

---

7.  Here, Mr. Hill is challenging the results of an election that occurred almost thirteen years ago.

8.  As previously noted, Mr. Stowers pled guilty to one count of buying votes in connection with the 2004 primary election in Lincoln County. Mr. Hill's complaint, however, alleged that Mr. Stow-

ers also bought votes during the 1996 election. For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the allegations set forth in the complaint are taken as true. *Sedlock, supra,* 222 W.Va. at 550, 668 S.E.2d at 179.

Virginia Consumer Credit and Protection] Act were to be given protection. Such manifest public policy should not be frustrated by a holding that an employee of a lending institution covered by the Act, who seeks to ensure that compliance is being made with the Act, can be discharged without being furnished a cause of action for such discharge.

*Id.* at 125–126, 246 S.E.2d at 276. Accordingly, this Court held:

> The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge.

Syllabus, *Harless.*

In this case, Mr. Hill contends that public policy in West Virginia protects and safeguards free and fair elections without undue influence by unlawful vote-buying. While we agree that election fraud is clearly against West Virginia public policy, we cannot agree with Mr. Hill's contention that such conduct gives rise to a private cause of action against a person who engages in the illegal activity by that person's election opponent. In *Harless,* this Court found that a private cause of action was appropriate because there was no other mechanism available to enforce the public policy at issue. As explained in the preceding sections, there are procedures in place that allow a candidate in an election to contest the results. These procedures constitute the mechanism by which the Legislature has sought to secure free and fair elections in this State. In other words, West Virginia's public policy of ensuring fair and free elections is enforced through the procedure for contesting an election. Even more importantly, criminal statutes such as W. Va.Code §§ 3–8–11, 3–9–12, 3–9–13 set forth penalties for election misconduct involving bribing voters and buying and selling votes. Moreover, there are also federal laws that impose criminal penalties for such activities. In fact, Mr. Stowers was indicted pursuant to 18 U.S.C. § 597. *See* note 4, *supra.* He ultimately pled guilty to one count of violating that statute and was sentenced to six months in prison.

In rejecting Mr. Hill's public policy claim, the circuit court relied upon the decision of the Fourth Circuit Court of Appeals in *Hutchinson v. Miller,* 797 F.2d 1279 (4th Cir.1986). In *Hutchinson,* three unsuccessful candidates for three separate public offices in West Virginia sought to recover approximately nine million dollars in damages for alleged irregularities in the 1980 general election pursuant to 42 U.S.C. § 1983, 18 U.S.C. § 1964, and the common law of West Virginia. Mr. Hill contends that the case has no application here because the Court ultimately rejected the plaintiffs' claims based upon its conclusion that "federal courts do not sit to award post-election damages to defeated candidates." 797 F.2d at 1287. However, we find the Court's discussion instructive on this issue. The Court explained that

> [t]hose who enter the political fray know the potential risks of their enterprise. If they are defeated by trickery or fraud, they can and should expect the established mechanisms of review—both civil and criminal—to address their grievances, and to take action to insure legitimate electoral results. In this way, they advance the fundamental goal of the electoral process—to determine the will of the people—while also protecting their own interest in the electoral result. A suit for damages, by contrast, may result principally in financial gain for the candidate. We can imagine no scenario in which this gain is the appropriate result of the decision to pursue elected office, and we can find no other case in which a defeated candidate has won such compensation. Nor do we believe, in light of the multitude of alternative remedies, that such a remedy is necessary either to deter misconduct or to provide incentives for enforcement of election laws.

*Id.* Based on all the above, it is clear that permitting a losing candidate in an election to pursue a private cause of action for monetary damages against his opponent would actually be contrary to West Virginia public policy. Accordingly, this Court finds no merit to Mr. Hill's argument.

■ Notwithstanding all the above, it is further noted that Mr. Hill's claims would also likely fail simply because of the extreme difficulty of proof, both as to whether election fraud activities changed the outcome of an election held ten years prior to such suit being filed and whether Mr. Hill sustained any damages as a result of Mr. Stowers's alleged vote-buying activities. " 'The general rule with regard to proof of damages is that such proof cannot be sustained by mere speculation or conjecture.' Syllabus Point 1, *Spencer v. Steinbrecher*, 152 W.Va. 490, 164 S.E.2d 710 (1968)." Syllabus Point 6, *Taylor v. Elkins Home Show, Inc.*, 210 W.Va. 612, 558 S.E.2d 611 (2001). In this case, Mr. Hill is claiming that he is entitled to the salary and benefits he would have received had he won the 1996 election for the Circuit Clerk of Lincoln County. Even if a claim existed, Mr. Hill would have to prove by a preponderance of evidence that he would have been elected to the office had Mr. Stowers not engaged in the alleged illegal conduct. It would have been impossible to determine in 2006, when Mr. Hill filed this lawsuit, how voters would have voted in the absence of Mr. Stowers's alleged vote-buying activities in 1996. In other words, a civil action for damages for election fraud is unsusceptible to the level of proof necessary to sustain such a claim.

Having found that there is no merit to any of the claims asserted by Mr. Hill, this Court concludes that the circuit court did not err in granting Mr. Stowers's motion to dismiss. Mr. Hill failed to set forth a claim upon which relief can be granted and dismissal of his complaint was proper.[9]

## IV.

## CONCLUSION

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Lincoln County entered on October 1, 2007, is affirmed.

Affirmed.

9. As previously discussed, Mr. Hill sought to disqualify Judge Hoke during the proceedings below and has again asserted that this Court should appoint a different circuit judge to preside over the case. Given our decision above, it is not necessary to address this issue. However,

Justice McHUGH, deeming himself disqualified, did not participate in the decision in this case.

Judge MOATS, sitting by temporary assignment.

it is noted that Rule 17.05 of the West Virginia Trial Court Rules states that "[a]ll rulings and orders relating to the recusal of disqualification of a judge shall be considered interlocutory in nature and not subject to direct or immediate appeal."