IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

_____

No. 13-0744

_____

FILED

June 11, 2014
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

ROGER F. HOLT,
Plaintiff Below, Petitioner

v.

WEST VIRGINIA-AMERICAN WATER COMPANY,
Defendant Below, Respondent

_____

Appeal from the Circuit Court of Kanawha County
The Honorable James C. Stucky, Judge
Civil Action No. 13-C-656

AFFIRMED

_____

Submitted: April 8, 2014
Filed: June 11, 2014

John H. Tinney, Esq.                    John Philip Melick, Esq.
Wesley M. Jarrell II, Esq.              Ryan J. Aaron, Esq.
The Tinney Law Firm PLLC                Jackson Kelly PLLC
Charleston, West Virginia               Charleston, West Virginia
Counsel for the Petitioner              Counsel for the Respondent

The Opinion of the Court was delivered PER CURIAM.

JUSTICE WORKMAN, JUSTICE KETCHUM, and JUSTICE LOUGHRY concur and reserve the right to file separate opinions.

JUSTICE DAVIS dissents and reserves the right to file a separate opinion.

## SYLLABUS BY THE COURT

"'"A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951).' Syl. Pt. 1, *State v. Jarvis*, 199 W.Va. 635, 487 S.E.2d 293 (1997)." Syl. pt. 2, *Mace v. Mylan Pharm., Inc.*, 227 W. Va. 666, 714 S.E.2d 223 (2011).

Per Curiam:

This case is before the Court on appeal by the petitioner, Roger F. Holt, of the June 24, 2013, order of the Circuit Court of Kanawha County dismissing his complaint against the respondent, West Virginia-American Water Company ("WVAW"). The circuit court determined that Mr. Holt's claims for damages and penalties, which he brought pursuant to the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W. Va. Code § 46A-1-101 *et seq.*, arose from transactions encompassed by W. Va. Code § 46A-1-105(a)(3) (2000), which precludes Mr. Holt's WVCCPA claims. After a thorough review of the record presented for consideration, the briefs, the legal authorities cited, and the arguments of parties, we find that the circuit court did not commit reversible error. Therefore, we affirm the circuit court's order.

## I. Factual and Procedural Background

In December 2009, Mr. Holt received his residential water bill from WVAW, charging him $5,136.96. Believing the bill was in error—Mr. Holt asserts that his customary monthly bill ranged from $21.00 to $30.00—he contacted both WVAW and the Public Service Commission ("PSC" or "Commission") to inquire about the charge. The PSC then inspected Mr. Holt's water line and concluded that the overcharge likely resulted from a problem with Mr. Holt's water meter. WVAW subsequently determined that the meter box was leaking, and in January 2010, WVAW repaired the

1

meter box.[1] WVAW did not inform Mr. Holt of the repair, and it did not adjust Mr. Holt's account to eliminate the overcharge on his December 2009 bill. Instead, WVAW continued to seek payment for the full amount of the $5,136.96 bill.

On April 15, 2010, Mr. Holt filed a formal complaint with the PSC against WVAW. The PSC issued an order on April 19, 2010, granting interim relief requested by Mr. Holt. The order

> directed that, pending the final resolution of this formal complaint proceeding [WVAW] not terminate water service to Complainant [Mr. Holt] and continue to provide water service to the complainant, provided that the Complainant pays his bills for current water service on or before the due dates stated on each billing while this case is pending.

WVAW accepted responsibility for the overcharge due to the leaking meter, and on May 13, 2010, WVAW credited $5,110.64 to Mr. Holt's account. In May, WVAW also informed Mr. Holt that a second leak existed, which it believed was on Mr.

---

[1] Pursuant to Rules for the Government of Water Utilities, W. Va. Code R. § 150-7-1 *et seq.*, the utility—herein WVAW—is required to maintain and operate water meters. W. Va. Code R. § 150-7-3.1 (2003) ("Unless otherwise authorized by the Commission, each utility shall provide and install at its own expense . . . and shall continue to own, maintain, and operate all equipment necessary for the regulation and measurement of water, in accordance with tariff or contract provisions, to its customers.").

Holt's side of the water line. Mr. Holt repaired the line on June 11, 2010,[2] but WVAW refused to credit charges associated with the second leak, approximately $250.00 per month from January 2010 to June 2010, because under WVAW's leak adjustment policy, Mr. Holt was required to replace his entire water line in order to receive a credit for the leak. Upon the discovery of a third leak, Mr. Holt contracted in June 2010 to replace the water line. Because of problems associated with acquiring an excavator, the line replacement was not completed until November 2010.

Between December 2009 and November 2010, WVAW billed Mr. Holt for his regular water usage and for the water flow occasioned by the leaks. During that time, Mr. Holt paid only for his regular usage, between $26.00 and $30.00. Each time Mr. Holt did not pay his bill in full, WVAW assessed a 10% late penalty to his account. Each month, the previous month's penalty was added to the total bill, resulting in a progressive increase of the monthly penalty imposed. Mr. Holt also received termination notices from WVAW, and in October 2010, Mr. Holt's service was terminated for nonpayment of the disputed charges. However, service was restored the following day. At the request of PSC staff, WVAW credited Mr. Holt's account for the second leak on October 29, 2010, in the amount of $1,643.12.

---

[2] Pursuant to W. Va. Code R. § 150-7-5.3.h (2003), "[a] customer must maintain his service pipe in good condition and free from all leaks and defects, at the customer's cost and expense."

On November 30, 2010, an administrative law judge ("ALJ") assigned by the PSC heard testimony and received evidence from Mr. Holt and WVAW regarding the billing dispute. By order of March 3, 2011, the PSC adopted the ALJ's recommended decision, finding that WVAW had

> arbitrarily adopted a leak adjustment policy which is contrary to and unsupported by the Commission's Water Rules [W. Va. Code R. § 150-7-1 *et seq.*]. The Commission's Water Rules do not require leak adjustments to be limited to a two-month time period or to be limited to a one-time adjustment.

The PSC ordered that Mr. Holt be given a leak adjustment for billing between June 2010 and November 2010, and that Mr. Holt's account be adjusted for any inappropriate late penalty charges between December 2009 and November 2010. Although Mr. Holt requested damages in the amount of $1,885.48, which represented the amount he expended in labor and materials to replace his water line, the PSC concluded that it did not have jurisdiction to award the monetary damages sought.

On April 4, 2013, Mr. Holt filed a complaint against WVAW in the Circuit Court of Kanawha County seeking damages and penalties for alleged violations of the WVCCPA, specifically violations of W. Va. Code § 46A-6-104 (1974),[3] arising from

---

[3] W. Va. Code § 46A-6-104 states, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." W. Va. Code § 46A-6-102(7) (2005) provides a nonexclusive list of sixteen acts or practices that constitute "unfair methods of competition and unfair or deceptive acts or practices."

4

WVAW's business policies and practices regarding leaks in Mr. Holt's water line.[4] Mr.

Holt also sought attorney fees and costs. WVAW filed a motion to dismiss the action

pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure ("Rule

---

[4] Mr. Holt alleges in his complaint that WVAW engaged in the following unfair or deceptive acts or practices:

    a.    Failing to notify Plaintiff that it was responsible for the first, large leak until after Plaintiff was forced to file a formal complaint with the PSC.

    b.    Continuing to demand payment for the first, large leak after determining that it was responsible for the leak.

    c.    Forcing Plaintiff to file a formal complaint with the PSC in order to obtain the relief he had originally requested regarding the first, large leak and to which he was entitled according to [WVAW]'s own assessment.

    d.    Assessing late penalties against Plaintiff's account for nonpayment of charges derived from the first, large leak in January 2010, February 2010, March 2010, and April 2010, with each assessment constituting a discrete violation.

    e.    Assessing late penalties against Plaintiff's account for nonpayment of disputed charges during the pendency of Plaintiff's April 15, 2010 PSC complaint in May 2010, June 2010, July 2010, August 2010, September 2010, October 2010, and November 2010, with each assessment constituting a discrete violation.

    f.    Applying a leak adjustment policy against Plaintiff that, according to the PSC, was "unreasonable," "arbitrarily adopted," and "contrary to and unsupported by the Commission's Water Rules." [Citation to exhibit omitted.]

    g.    Threatening to terminate Plaintiff's water service in violation of the PSC's April 19, 2010 Order Granting Interim Relief via letters dated October 4, 2010 and October 15, 2010, with each letter constituting a discrete violation.

    h.    Terminating Plaintiff's water service in violation of the PSC's April 19, 2010 Order Granting Interim Relief.

12(b)(6)"),[5] arguing that the express terms of W. Va. Code § 46A-1-105(a)(3)[6] exempt WVAW's transactions under its public utility tariff from the WVCCPA and that Mr. Holt's claims arise from those transactions. WVAW further argued that the complaint did not allege any conduct of WVAW that would constitute an "unfair or deceptive" act or practice under the WVCCPA.

The circuit court held a hearing on the motion to dismiss on May 30, 2013. On June 24, 2013, the circuit court entered an order granting WVAW's motion to dismiss. In that order, the court found, "Mr. Holt's pled claims arise from transactions encompassed by W. Va. Code § 46A-1-105(a)(3), and thus are statutorily excluded from the WVCCPA." The court ordered that the case be dismissed. Mr. Holt appeals that order to this Court.

---

[5] Rule 12(b) states, in pertinent part:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted . . . . If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . .

[6] The pertinent language of W. Va. Code § 46A-1-105 is quoted *infra* Part III.

## II. Standard of Review

This is an appeal of the circuit court's order granting WVAW's Rule 12(b)(6) motion to dismiss.

> This Court's review of a circuit court's dismissal of a complaint pursuant to Rule 12(b)(6) is plenary. In other words, "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syllabus Point 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995).

*Hill v. Stowers*, 224 W. Va. 51, 55, 680 S.E.2d 66, 70 (2009).

## III. Analysis

On appeal, Mr. Holt asserts that the circuit court erred in finding that his claims could not be brought under the WVCCPA because of the exclusion set forth in W. Va. Code § 46A-1-105(a)(3). W. Va. Code § 46A-1-105(a)(3) states, in pertinent part, "This chapter does not apply to . . . [t]ransactions under public utility or common carrier tariffs if a subdivision or agency of this state or of the United States regulates the charges for the services involved, the charges for delayed payment, and any discount allowed for early payment . . . ." Although the circuit court did not explicitly state it, its decision necessarily implies that it determined that Mr. Holt's claims arise from transactions under a public utility tariff.

Mr. Holt argues four main points in this appeal: that W. Va. Code § 46A-1-105(a)(3) is ambiguous and must be construed in his favor; that the public utility

7

exclusion in W. Va. Code § 46A-1-105(a)(3) does not bar his claim because the claim pertains to WVAW's unfair and deceptive course of conduct, not its rates; that claims under the WVCCPA against public utilities would not unduly interfere with the PSC's jurisdiction over utilities; and that the circuit court's application of the exclusion in W. Va. Code § 46A-1-105(a)(3) frustrates the WVCCPA's "gap-filling" function.

WVAW disagrees on all of Mr. Holt's points, arguing that W. Va. Code § 46A-1-105(a)(3) is not ambiguous, that it is not limited to "rates," that it is effective for all WVCCPA claims, and that it excludes Mr. Holt's claims. WVAW further contends that allowing claims such as Mr. Holt's claims to proceed in circuit court would unduly interfere with public utility regulation and that there is no "gap" to be filled by the WVCCPA. Finally, WVAW asserts that it was entitled to dismissal on alternative grounds: Mr. Holt failed to allege an "unfair or deceptive act or practice" within the meaning of W. Va. Code § 46A-6-102(7).

We begin our analysis by addressing Mr. Holt's argument that W. Va. Code § 46A-1-105(a)(3) is ambiguous. Specifically, Mr. Holt contends that the WVCCPA does not define "public utility tariffs" or what it means to "transact under" a tariff for consumer protection purposes and that it is therefore unclear as to whether the statute prevents consumers from challenging more than PSC-approved rates and charges. Mr. Holt asserts that the statute is best read to only prevent consumers from challenging rates and charges under the WVCCPA. As noted above, WVAW disagrees with Mr. Holt and

8

urges this Court not to find the language to be ambiguous. WVAW argues that claims that can be excluded under W. Va. Code § 46A-1-105(a)(3) may include more than PSC-approved rates and charges, and may include claims arising out of the imposition of those rates and charges.

We have long held that "'"[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951).' Syl. Pt. 1, *State v. Jarvis*, 199 W.Va. 635, 487 S.E.2d 293 (1997)." Syl. pt. 2, *Mace v. Mylan Pharm., Inc.*, 227 W. Va. 666, 714 S.E.2d 223 (2011). *See also* syl. pt. 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970) ("Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."). "A statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *Hereford v. Meek*, 132 W. Va. 373, 386, 52 S.E.2d 740, 747 (1949). Additionally, we have said that "courts may not find ambiguity in statutory language which laymen are readily able to comprehend; nor is it permissible to create an obscurity or uncertainty in a statute by reading in an additional word or words." *Crockett*, 153 W. Va. at 718–19, 172 S.E.2d 387.

We disagree with Mr. Holt's contention that the statutory language he questions is ambiguous. It plainly is not. The words used in the statute are commonly understood individually and when considered in conjunction with one another. *See, e.g.*, 64 Am. Jr. 2d *Public Utilities* § 61 (2014) ("A 'tariff' is a public document setting forth services being offered; rates and charges with respect to those services; and governing rules, regulations, and practices relating to those services."); *In re Waikoloa Sanitary Sewer Co., Inc.*, 125 P.3d 484, 492 (Haw. 2005) (same); *Adams v. N. Ill. Gas Co.*, 809 N.E.2d 1248, 1263 (Ill. 2004) (same); *Danisco Ingredients USA, Inc. v. Kansas City Power & Light Co.*, 986 P.2d 377, 381 (Kan. 1999) ("Tariffs are those terms and conditions which govern the relationship between a utility and its customers."); *In re Complaint of Reynoldsburg*, 979 N.E.2d 1229, 1238 (Ohio 2012) ("Public utility tariffs are books or compilations of printed materials filed by public utilities with, and approved by, the commission that contain schedules of rates and charges, rules and regulations, and standards for service."); *Black's Law Dictionary* 1726 (10th ed. 2014) ("[T]ransaction . . . 1. The act or an instance of conducting business or other dealings; esp., the formation, performance, or discharge of a contract. 2. Something performed or carried out; a business agreement or exchange. 3. Any activity involving two or more persons." (Emphasis omitted)).

The term "public utility tariffs" is universally understood to mean more than just PSC-approved rates and charges. It also governs the rules, regulations, and practices relating to rate- and charge-based services between a utility and its consumers.

10

We therefore find that the language of W. Va. Code § 46A-1-105(a)(3) is unambiguous and clearly expresses the Legislature's intent that the exclusion from suit set forth therein applies to more than simply the PSC-approved rates and charges themselves. Reading into the term "public utility tariffs" the restrictive meaning urged by Mr. Holt would require us to alter an unambiguous statute in a manner plainly not intended by the Legislature. We will therefore give full force and effect to W. Va. Code § 46A-1-105(a)(3). *See* syl. pt. 2, *Mace*, 227 W. Va. 666, 714 S.E.2d 223.

Having determined that W. Va. Code § 46A-1-105(a)(3) is not ambiguous, we now proceed to apply the statute to this case. First, we note that in this appeal, the parties do not dispute that WVAW is a public utility. Further, the parties do not dispute that WVAW is regulated by the PSC, which is a state agency.[7] The PSC regulates water utilities, including WVAW, through implementation and application of Rules for

---

[7] W. Va. Code § 24-2-2 (1998) provides the statutory authorization for the PSC's regulation of public utilities:

> The commission is hereby given power to investigate all rates, methods and practices of public utilities subject to the provisions of this chapter; to require them to conform to the laws of this State and to all rules, regulations and orders of the commission not contrary to law; and to require copies of all reports, rates, classifications, schedules and timetables in effect and used by the public utility or other person, to be filed with the commission, and all other information desired by the commission relating to the investigation and requirements, including inventories of all property in such form and detail as the commission may prescribe.

(In part).

11

Government of Water Utilities ("Water Rules"), W. Va. Code R. § 150-7-1 *et seq.* Through these rules, the PSC regulates, as described in W. Va. Code § 46A-1-150(a)(3), charges for services, charges for delayed payment, and any discount allowed for early payment. Thus, whether W. Va. Code § 46A-1-105(a)(3) applies to the claims in this case turns on whether Mr. Holt's claims arise from transactions under WVAW's tariff.

The PSC's Water Rules require that water utilities file tariffs with the PSC. W. Va. Code R. § 150-7-2.2.a. Tariffs must contain a schedule of all of a water utility's rates, charges, tolls, and all of the utility's rules and regulations. W. Va. Code R. § 150-2-2.1 (2002). WVAW's tariff, titled "Rates, Rules and Regulations for Furnishing Water at Cities, Towns, Communities, Etc." ("Tariff") was issued under the authority of the PSC. First and foremost, the Tariff provides the rates for water usage and states that "[b]ills and notices of the company will be mailed or delivered to the consumer's last address as shown by the records of the company." Further, "Service may be discontinued and/or disconnected . . . for non-payment of account when due," and that "the company [WVAW] will not be liable for any accident, breaks, or leakage arising in connection with the supply." Additionally, the Tariff includes provisions dealing with delayed payment penalties and reconnection charges following discontinuance of water service for non-payment of charges.

We conclude that Mr. Holt's claims all arise from transactions described in the Tariff. Accordingly, W. Va. Code § 46A-1-105(a)(3) applies to exclude Mr. Holt's

12

WVCCPA claims. Therefore, the circuit court's order dismissing Mr. Holt's complaint was not in error, and we affirm that decision.[8]

## IV. Conclusion

For the reasons set forth above, this Court affirms the circuit court's order entered June 24, 2013, dismissing Mr. Holt's complaint against WVAW.

Affirmed.

---

[8] Having determined that the language of W. Va. Code § 46A-1-105(a)(3) is unambiguous and clearly expresses legislative intent, that Mr. Holt's claims arise from transactions under a public utility tariff, and having found that the circuit court correctly dismissed the case under the exclusion set forth in W. Va. Code § 46A-1-105(a)(3), we decline to address Mr. Holt's remaining points on appeal. Because we agree with WVAW that the action may not be maintained pursuant to W. Va. Code § 46A-1-105(a)(3), we also decline to address WVAW's argument that Mr. Holt did not present a valid claim pursuant to W. Va. Code § 46A-6-102(7).

13