*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## <u>ENTRY ORDER</u>

SUPREME COURT DOCKET NO. 2014-478

MAY TERM, 2015

| | | |
|---|---|---|
| Albert Alpine Bingham | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Addison Unit, |
| v. | } | Civil Division |
| | } | |
| | } | |
| Town of Middlebury | } | DOCKET NO. 100-5-14 Ancv |

Trial Judge: Robert A. Mello

In the above-entitled cause, the Clerk will enter:

Plaintiff appeals pro se from a superior court order dismissing his complaint against defendant Town of Middlebury. We affirm.

The material facts may be briefly summarized. In his original and amended complaints, plaintiff alleged that the named defendants Town of Middlebury, Middlebury College, Addison Press, Inc., and Bread Loaf Corporation had individually and collectively worked to unduly influence a Town vote approving a bond measure to construct new Town offices and a recreational center.[1] The claim was brought under two statutes. The first, 17 V.S.A. § 2017, provides: "A person who attempts by bribery, threats, or any undue influence to dictate, control, or alter the vote of a freeman or freewoman about to be given at a local, primary, or general election shall be fined not more than $200.00." The second, 17 V.S.A. § 2603, authorizes "any legal voter" to contest an election alleging that "errors were committed in the conduct of the election," there was "fraud in the electoral process," or "any other reason" the result is invalid. Plaintiff sought to invalidate the election, and requested punitive damages.

Defendants filed separate motions to dismiss the complaint for failure to state a claim. The trial court granted the motions in a written decision in October 2014, and subsequently issued a brief entry order reaffirming its decision in response to plaintiff's "request for clarification." This appeal followed.

Plaintiff has significantly narrowed the issues on appeal by stipulating to a dismissal of all of the named defendants except the Town of Middlebury, by waiving any claim for damages, and by asserting that his "only claim is that the elections, to any casual observer, were unduly influenced and must be nullified."

To the extent that the remaining claim is predicated on 17 V.S.A. § 2017, the trial court properly ruled that plaintiff lacked standing. The statute is one of a series of "Offenses Against

---

[1] As the trial court noted, there were actually two votes on the same ballot measure, the first in early April 2014, and a revote in May 2014.

the Purity of Elections" set forth in Title 17, chapter 35, which carry penalties ranging from fines to imprisonment. 17 V.S.A. §§ 2011-2021. There is nothing in the statute or statutory scheme to suggest a legislative intent to enable its private enforcement. See Carr v. Peerless Ins. Co., 168 Vt. 465, 473 (1998) (in determining whether to infer private right of faction based on statutory claim, we look to "whether there is any indication of legislative intent, express or implied, to allow or deny a remedy," and "whether it is consistent with the statutory scheme to imply a remedy"). On the contrary, the elections statutes expressly authorize an administrative procedure allowing persons "who believe[] that a violation . . . has occurred" to file a complaint with the Secretary of State to investigate. 17 V.S.A. § 2458. Furthermore, as discussed below, the elections code contains an entirely separate chapter authorizing election contests "by any legal voter." Id. § 2603; see Hill v. Stowers, 680 S.E.2d 66, 74 (W. Va. 2009) (finding no private right of action for election fraud where "comprehensive and detailed scheme" existed to contest elections). Accordingly, the court's dismissal of this claim was proper.

The trial court's dismissal of the claim seeking to invalidate the election based on 17 V.S.A. § 2603 was also sound. Plaintiff alleged that he had submitted a different "plan" to the selectboard which was not submitted to the voters, and that the Town spent $15,000 in taxpayer money "to promote" the plan on the ballot.[2] We have observed that the "extraordinary . . . remedy of election invalidation" requires "more than merely a claim of election irregularity." Putter v. Montpelier Pub. Sch. Sys., 166 Vt. 463, 467 (1997). Voter dilution, pervasive election fraud, and willful tampering with election procedures "represent the kinds of violations for which courts have . . . employed the new-election remedy." Id. at 468. As the trial court here correctly observed, plaintiff's allegations, on their face, do not "approach the threshold" of misconduct warranting such an extraordinary remedy." Merely alleging that plaintiff submitted an alternative plan to the Town does not show that the election in question was fraudulent or improper, nor does simply alleging that the Town spent money to promote the ballot initiative show misconduct, much less misconduct of such an egregious nature as to invalidate the vote. See id. at 470 (noting that "the line between providing 'neutral information' and promoting 'partisan' views on election issues may be 'exceedingly difficult' to draw" and that the material must be "outrageously illegal" to invalidate an election). Accordingly, we find no basis to disturb the judgment.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
John A. Dooley, Associate Justice


_____
Marilyn S. Skoglund, Associate Justice

---

[2] Although plaintiff also initially alleged that the Town encouraged the misconduct of the other defendants, he has dismissed those claims.